IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 36386-2009

<table>
<tr><td>In the Matter of:  JANE DOE and JOHN DOE, Children Under the Age of 18.</td><td>)<br>)<br>)</td><td>Boise, December 2009 Term</td></tr>
<tr><td>FRED HEISS, ANNABELLE HEISS, and MAIA HEISS,</td><td>)<br>)<br>)<br>)</td><td>2009 Opinion No.  155</td></tr>
<tr><td>Petitioners-Respondents-Cross Appellants,</td><td>)<br>)<br>)<br>)</td><td>Filed: December 30, 2009<br><br>Stephen W. Kenyon, Clerk</td></tr>
<tr><td>v.</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>VIOLETTA CONTI,</td><td>)<br>)</td><td></td></tr>
<tr><td>Respondent-Appellant-Cross Respondent.</td><td>)<br>)<br>)</td><td></td></tr>
</table>

Appeal from the Magistrate Court of the First Judicial District of the State of Idaho, in and for Boundary County.  The Hon. Justin W. Julian, Magistrate Judge.

The order of the magistrate court is affirmed in part and reversed in part.

Liesche & Reagan, Coeur d'Alene, and Tolin & Victoria, LLP, Seattle, for appellant.  Anna M. Tolin argued.

Finney Finney & Finney, Sandpoint, for respondents.  Rex A. Finney argued.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment denying a petition to remove a testamentary guardian of two orphaned minor children.  We affirm in part and reverse in part the judgment of the magistrate court.

## I.  FACTS AND PROCEDURAL HISTORY

Jane Doe, age 11, and John Doe, age 6, (Children) resided with their parents Karl Heiss (Karl) and Marisa Bauducco-Heiss (Marisa) in Bonner County, Idaho.  On October 1, 2008, the family left Idaho intending to travel to Argentina to spend six months with Marisa's mother,

Violetta Conti (Conti), who resides in Ushuaia, Tierra del Fuego, at the southern tip of Argentina. They first traveled by car to Seattle, Washington, to visit close friends, and then intended to drive to Malibu, California, to visit Karl's parents, Fred and Annabelle Heiss (Heisses). From there they intended to drive to Los Angeles from where they would fly to Argentina, expecting to arrive on October 14, 2008.

In 2002, Karl and Marisa (Parents) had both executed holographic wills naming Conti as Children's guardian in the event of Parents' deaths. They had entrusted their close friends in Seattle with the wills. On the morning of October 3, 2008, the family had left their friends' house in Seattle and were driving south on I-5 when they were involved in a tragic accident. Parents were killed instantly, Jane Doe suffered life-threatening injuries that will result in permanent impairment, and John Doe suffered injuries from which he has recovered.

On October 22, 2008, one of their Seattle friends, who was nominated in Parents' wills as personal representative, filed an application for informal probate, an application for informal appointment of personal representative, and an application for testamentary appointment of Conti as guardian of Children. On the same date, Conti filed her acceptance of appointment as guardian.

On October 23, 2008, Conti also filed a petition to be appointed guardian of Children. On the same day, the magistrate court entered an order appointing her as temporary guardian, and Conti filed letters of temporary guardianship.

On October 24, 2008, Heisses filed a petition to be appointed Children's temporary and permanent guardians. They also requested appointment of an attorney or guardian ad litem for John Doe.

Jane Doe was hospitalized in Seattle, Washington. Heisses obtained a temporary residence there to be near her. Conti and Heisses then entered into a stipulation providing that during the pendency of the proceedings Heisses could have custody of John Doe, with Conti having reasonable visitation; John Doe would remain in either Idaho or Washington; and Conti and Heisses together would make decisions regarding Jane Doe's care. On October 28, 2008, the court entered an order consistent with that stipulation, and that order was later amended pursuant to stipulation of the parties. The court also entered an order appointing counsel for Children.

On January 8, 2009, after a court hearing, the court informed the parties of its initial opinion regarding several issues in the guardianship proceedings. During that discussion, the

2

court stated that in its opinion, the party challenging the testamentary appointment of a guardian must show that the guardian is unfit to be a guardian.

On January 29, 2009, Heisses and their daughter Maia Heiss filed a petition to have Conti declared unfit to be guardian of Children. The court held a three-day trial on the petition, and then entered its memorandum opinion on March 27, 2009. The court ruled that "the testamentary guardianship appointment must be upheld unless the guardian is found to be unqualified or unfit to discharge his or her inherent duties and responsibilities, and that the party challenging the fitness of the presumptive guardian bears the burden of proof." The court addressed the twenty-six different allegations of unfitness alleged by Heisses and found them unproven. The court concluded that they had failed to prove that Conti was unfit or unqualified to serve as Children's guardian. The court noted that "it is nonetheless comforting for the court to know that the children will enjoy a good life in Ushuaia." The court found that Conti was "a fit and proper person to discharge the duties of testamentary guardian." The court also wrote that "much of Heiss' case asserting Conti's unfitness did have the appearance of 'grasping at straws.'"

Parents' wills stated that they desired Heisses to have the children for one month each year. The court construed those provisions as being testamentary appointments of Heisses as coguardians for one month each year. The court also held that due to Jane Doe's medical condition, Conti would not have full powers of guardianship over her until she was medically cleared to travel to Argentina. Until then, the court held that Conti and Heisses "shall continue to exercise their current *de facto* temporary powers of equal co-guardianship over [Jane Doe]."[1] On April 9, 2009, the court entered its order appointing Conti and Heisses as coguardians.

On April 1, 2009, Heisses filed a notice of appeal to the district court. On April 13, 2009, Conti filed a motion for permissive appeal to this Court, which was granted on April 23, 2009. She then filed a notice of appeal to this Court on May 5, 2009, and Heisses filed a notice of cross-appeal.

---

[1] Conti has not challenged this provision on appeal, so we express no opinion on it.

## II. ISSUES ON APPEAL

1.  Did the court err in interpreting Parents' wills as including a testamentary appointment of Heisses as coguardians?

2.  Did the court apply the wrong standard in denying Heisses' petition to remove Conti as guardian?

3.  Did the court err in holding that Heisses were not entitled to the rights set forth in Idaho Code § 32-717(3)?

4.  Is Conti entitled to an award of attorney fees for defending the cross-appeal?

5.  Did the court err in ordering the parties to pay the cost of Children's court-appointed counsel?

## III. ANALYSIS

### A. Did the Court Err in Interpreting Parents' Wills as Including a Testamentary Appointment of Heisses as Coguardians?

Conti appeals the court's action in appointing Heisses as coguardians. Parents' wills were both handwritten, but Mother's will was written in Spanish and then translated into English for these proceedings. It is undisputed that Parents' wills are valid. It is also undisputed that both wills nominated Conti as guardian of Children. The issue is whether the wills also nominated Heisses as coguardians for one month each year.

The relevant portions of Parents' wills are as follows:

Karl's will:

> In such case that we (Marisa Bauducco and Karl Heiss) should die, the surviving children ([Jane] and [John]) should be left in the care of (in this order) Violeta E. Conti (mother of Marisa Bauducco) [Marisa's sister], or [Marisa's brother]. If such possibility exists it would be our wish that they be able to raise them in our (Idaho) house. One month out of the year should be reserved for Anna and Fred Heiss (parents of Karl Heiss) to raise the children where they see fit to do so. . . . .

Marisa's will:

> In case that we (Karl Heiss and Marisa Bauducco) would die; the surviving children ([Jane] and [John]) will stay under the guardianship of Violeta E. Conti (Mother of Marisa) [Marisa's sister] or [Marisa's brother]. If at all possible we would prefer that the children and the guardians live and grow up in our house in Idaho. One month of the year should be reserved for Anna and Fred Heiss (Karl Heiss's parents), the place of the visit shall be decided by them. . . . .

4

The court determined that Parents intended to execute identical wills with respect to the testamentary guardianship provisions, and the parties agree. "'[I]n construing the provisions of a will to ascertain the meaning of a testator, the cardinal rule of construction is to ascertain the testator's intent; and . . . [t]his intent is to be ascertained from a full view of everything within the four corners of the instrument.'" *Wilkins v. Wilkins*, 137 Idaho 315, 319, 48 P.3d 644, 648 (2002).

In construing the wills, the court began with the observation that Parents wanted Children to maintain contact with Heisses. Father's will stated, "One month out of the year should be reserved for Anna and Fred Heiss (parents of Karl Heiss) to raise the children where they see fit to do so," and Mother's will stated, "One month of the year should be reserved for Anna and Fred Heiss (Karl Heiss's parents), the place of the visit shall be decided by them." The court then reasoned, however, that the "legally proper" way to insure that the Heisses would have that visitation would have been to make them coguardians. The court wrote as follows:

> The legally proper method for accomplishing that goal, in this court's view, would have been to explicitly designate Heiss as limited co-guardians of the children, with Conti assuming the duties and powers of primary guardian during the remaining eleven months of the year. This approach is, in the court's opinion, preferable to interpreting said provisions as conferring "grandparents' visitation rights" which could be legally inadequate to allow Heiss to authorize medical treatment for the children in the U.S. in Conti's absence during their month of custody, or make international travel arrangements for the children, along with a host of other potential impediments.

The court then concluded that "[h]ad these legal nuances been properly explained to Karl and Marisa, the court believes that they would have specified Heiss as limited coguardians in their wills." The court found additional support for its conclusion from the provision in Father's will stating, "One month out of the year should be reserved for Anna and Fred Heiss (parents of Karl Heiss) to *raise* the children where they see fit to do so." (Emphasis added.) The court concluded that Father likely would not equate "raise" with "visit." The court did not address the comparable provision in Mother's will stating, "One month of the year should be reserved for Anna and Fred Heiss (Karl Heiss's parents), the place of the *visit* shall be decided by them." (Emphasis added.)

The court erred in its interpretation of the wills. First, the court must interpret the wills as written, not in a manner that would have, in the court's opinion, better accomplished one of

5

Parents' objectives. Although appointing Heisses as limited coguardians for one month a year would better insure that they had that time with Children, there are also problems that can arise with coguardianships when there are disagreements between the coguardians. The issue is what Parents intended from the wording of their wills, not what, in the court's view, would have been a better manner of accomplishing the goal of enabling Heisses to maintain contact with Children.

The court's decision was also based upon its belief that designating Heisses as coguardians was preferable to "interpreting [the wills] as conferring 'grandparents' visitation rights" which could be legally inadequate to allow Heiss to authorize medical treatment for the children in the U.S. in Conti's absence during their month of custody, or make international travel arrangements for the children, along with a host of other potential impediments." That concern does not empower the court to redraft the wills. In addition, that concern ignores the fact that when Children are visiting Heisses in the United States, Conti can delegate to Heisses the power to consent to medical care for Children, make international travel arrangements, and do whatever else is necessary. Idaho Code § 15-5-104 provides:

> [A] guardian of a minor . . . by a properly executed power of attorney, may delegate to another person, for a period not exceeding six (6) months . . . any of the . . . guardian's powers regarding care, custody, or property of the minor or ward including, but not limited to, powers for medical care and educational care of the minor or ward, except the parent's or guardian's power to consent to marriage or adoption of a minor or ward.

There is no contention that a limited power of attorney given by Conti to authorize Heisses to consent to medical care, arrange for international travel, or do other necessary acts would not be valid in California.

Second, the court interpreted the wills based upon its speculation as to how Parents would have drafted their wills had "these legal nuances been properly explained to [them]." The court's speculation as to what Parents would have done had they consulted with an attorney is not a proper factor in interpreting their wills.

Finally, the court found that Karl's use of the word "raise" was controlling without recognizing that Marisa used the word "visit." When the corresponding provisions in both wills are read together and in context, it is clear that Parents were simply indicating their preference that Heisses be able to choose where they exercise visitation with Children. Immediately preceding these provisions, both Parents expressed the desire that Children and their guardians

6

live at Parents' house in Idaho, if possible. Parents obviously knew that Conti lived in Argentina and that it was unlikely she would move to Idaho upon being appointed Children's guardian, assuming she could even obtain legal residency. Karl then wrote, "One month out of the year should be reserved for Anna and Fred Heiss (parents of Karl Heiss) to raise the children *where they see fit to do so*." (Emphasis added.) Mother wrote, "One month of the year should be reserved for Anna and Fred Heiss (Karl Heiss's parents), *the place of the visit* shall be decided by them." (Emphasis added.) These provisions were addressing *where* Heisses could exercise visitation. They should be able to exercise their month-long visitation where they desired, such as their home in Malibu, rather than in Argentina.[2] These provisions cannot reasonably be construed as appointing Heisses as coguardians.

It is clear that Parents did not appoint Heisses as coguardians. We therefore reverse the order appointing them as coguardians.

**B. Did the Court Apply the Wrong Standard in Denying Heisses' Petition to Remove Conti as Guardian?**

Heisses cross-appeal the court's denial of their petition to have Conti removed as Children's guardian. They contend that the court applied the incorrect standard when denying their petition.

Under Idaho law, a person can become the guardian of a minor child in one of two ways. "A person becomes a guardian of a minor by acceptance of a testamentary appointment or upon appointment by the court." I.C. § 15-5-201. If a person becomes a guardian by acceptance of a testamentary appointment, there is no need for appointment by the court. These are alternative ways of becoming the guardian of a minor.

Testamentary appointment of a guardian for an unmarried minor child is governed by Idaho Code § 15-5-202.[3] Under that statute, "A testamentary appointment becomes effective

---

[2] This should not be interpreted as implying that Conti, as guardian, is required to follow Parents' wishes regarding visitation by the Heisses.

[3] Idaho Code § 15-5-202 provides:

> A parent of a minor may appoint a guardian of an unmarried minor by will, subject to the right of the minor under section 15-5-203, Idaho Code. The termination of parental rights of a parent as to the minor shall also terminate the right of that parent to appoint a guardian for the minor. A testamentary appointment becomes effective upon the filing of the guardian's acceptance in the court in which the will is probated, if, at the decedent's death, no parent of the minor was alive who had a right to appoint a guardian for the minor. This state recognizes a

upon the filing of the guardian's acceptance in the court in which the will is probated, if, at the decedent's death, no parent of the minor was alive who had a right to appoint a guardian for the minor." Assuming the testamentary appointment is valid, the guardianship becomes effective upon the filing of the guardian's acceptance. It does not require court approval or any finding that such appointment is in the best interest of the child(ren). At that point, the court need only issue letters of guardianship to the testamentary guardian.

In their wills, Parents appointed Conti as guardian of Children. It is undisputed that the wills were valid. On October 22, 2008, Conti filed her acceptance of appointment in the court where Parents' wills were being probated. At that point, Conti became the guardian of Children, and she was entitled to exercise the powers of a guardian until her guardianship was terminated.

Heisses contend that even if there is a testamentary guardian, another person seeking to become guardian should be able to file a petition for appointment, and the court should then determine which of the two would make the better guardian. In support of that contention, they point to the sentence in Idaho Code § 15-5-204, which states, "In all cases, the court shall consider the best interests of the child as the primary factor in the determination whether to appoint, and whom to appoint, as a guardian for such child." They argue that "all cases" includes the testamentary appointment of a guardian. Their argument fails because section 15-5-204 governs the court appointment of a guardian, not the testamentary appointment. Likewise, sections 15-5-206 and 15-5-207 apply to court appointment, not testamentary appointment.

Section 15-5-204 begins, "The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated by prior court order or upon a finding that the child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment." The statute provides for court appointment of a guardian in two circumstances.

First, the court may appoint a guardian if "all parental rights of custody have been terminated by prior court order." *Id*. If the person who was appointed testamentary guardian has accepted that appointment, that person would have "parental rights of custody." I.C. § 15-5-209. The court would not be able to appoint a guardian unless the guardianship created by that

testamentary appointment effected by the guardian's acceptance under a will probated in another state which is the testator's domicile. Written notice of acceptance of the appointment must be given by the guardian to the minor and to the person having his care or to his nearest relation immediately upon acceptance of appointment.

testamentary appointment was first terminated by court order. The last sentence of section 15-5-204 confirms that. It states that a guardian appointed by will "has priority over any guardian who may be appointed by the court but the court may proceed with an appointment nonetheless upon a finding that the testamentary guardian has failed to accept the testamentary appointment within thirty (30) days after notice of the guardianship proceeding." It provides that where there has been a testamentary appointment of a guardian, "the court may proceed with an appointment" if the testamentary guardian has failed to accept the appointment timely. If the testamentary guardian has accepted the appointment timely, then the court may not proceed with the proceedings for court appointment of a guardian.

Second, the court may appoint a guardian "upon a finding that the child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment." I.C. § 15-5-204. Because neither circumstance existed in this case, section 15-5-204 would not permit the court to appoint Heissess as guardians unless Conti's guardianship had been terminated.

Heisses also "encourage[] the Idaho Supreme Court to adopt the view point adopted in Illinois." They cite to *In re Marriage of Russell*, 523 N.E.2d 193, 197 (Ill. Ct. App. 1988) (citations omitted), in which the court stated: "In Illinois, the best interests and welfare of the minor is the determining question in a guardianship proceeding. Consequently, the feelings and desires of the adult parties must yield to the court's obligation to protect the best interests of the minor child." The appointment of guardians for unmarried minor children in Idaho is governed by statute. It is not the province of this Court to adopt a different statutory scheme, such as that in Illinois. Enacting and modifying statutes is the province of the legislature.

Heisses also contend that their proposed procedure would be fairer than the existing statutes. They argue:

> It is fair and consistent with the rights of the infants to make a standard that all other things being equal (the child's best interests will be served equally by either competing guardian) a named testamentary guardian should have priority over another for appointment. It is not fair to the children to say that you are not entitled to have the best possible upbringing and life.
>
> It is not fair to treat orphans of a parent with a will naming a testamentary guardian, different than orphans whose parents did not have a will. One orphan is left to another by will, while the other orphan is entitled to have his or her best interest promoted.

Heisses' views of the unfairness of the statutory scheme are unavailing. It is the legislature that has the power to change the statutes, not this Court. The legislature obviously believed that parents should be able to direct who will have guardianship of their unmarried minor children in the event of the parents' deaths. Heisses are understandably dissatisfied with their son's choice of guardian for their grandchildren, but he was empowered to make that choice under Idaho law.

Although Heisses' motion sought a determination that Conti was unfit to be Children's guardian, it was in legal effect a motion to remove her as guardian. Idaho Code § 15-5-212(a) provides that a guardian may be removed "on the ground that removal would be in the best interest of the ward." The court held that this statute required a finding that the guardian was unfit or unqualified to remain as guardian. Heisses contend that the statute should be interpreted to permit removal if someone else would be a slightly better guardian.

Heissess assert that the words "best interest" in section 15-5-212(a) should be construed in the same manner as the words "best interests" in Idaho Code § 32-717(1), which provides for awarding custody in divorce actions. Under that statute, a court is often required to determine which of two loving, caring, and fit parents should have primary physical custody of a child based upon the best interests of the child after considering the factors listed in the statute and any other relevant factors. *See King v. King*, 137 Idaho 438, 445, 50 P.3d 453, 460 (2002). Because parents have equal rights to custody, the divorce court must compare the parents when determining that issue. According to Heisses, the same standard should apply in removing a guardian, assuming that the person seeking removal also requests appointment as a successor guardian.

Heisses' argument is not consistent with the guardianship statutes for four reasons. First, Idaho Code § 32-717(1) applies to divorce actions in which there are two parents who have equal rights to the custody of their minor child(ren). The divorce court must often make the difficult choice of determining which of the parents will be primary custodian of the child(ren). When considering the removal of the guardian of an unmarried minor child, the guardian and the person seeking to become the successor guardian are not on equal footing in relation to the child(ren). The guardian has "the powers and responsibilities of a parent who has not been deprived of custody of his minor and unemancipated child." The person seeking removal of the guardian and appointment as a successor guardian does not have any of those rights and

10

responsibilities. Thus, the issue is not whether the person seeking to become the successor guardian may be a better guardian. It is whether there is a reason to remove the current guardian.[4]

Second, Idaho Code § 15-5-204 begins, "The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated by *prior* court order." The termination of the existing guardian must first occur before the court can consider appointment of a successor guardian. Because the termination must occur first, the determination of whether removal of the guardian would be in the best interest of the child(ren) must focus upon the fitness of the existing guardian and whether it would be in the best interest of the child(ren) to remove the guardian regardless of who may be then appointed as successor guardian. This is supported by the comment to section 15-5-204, which Heisses quote in their brief, but apparently fail to appreciate its significance. In their brief, Heisses state as follows:

> The official comment (underlining added) to Idaho Code § 15-5-204, (which the Magistrate ruled is not applicable to the testamentary appointment of a guardian (R. Vol. I, P. 254), provides:
>> The words "all parental rights of custody" are to read with Sections 5-201 and 5-209 which give testamentary and court appointed guardians of minors certain parental rights respecting the minor. Hence, no authority to appoint a guardian for a minor exists if a testamentary guardian has accepted an effective appointment by *will*. The purpose of this restriction is to support and encourage testamentary appointments which may occur without judicial act. If a testamentary guardian proves to be unsatisfactory, removal proceedings as provided in Section 5-211 may be used if the objection device of Section 5-203 is unavailable.
>> . . . .
> Clearly the standard to remove the guardian named in a will should be the "best interests of the ward", rather than the fitness standard employed by the Magistrate. (Emphasis theirs.)

The portion of the comment underlined by Heisses states, "If a testamentary guardian proves to be *unsatisfactory*, removal proceedings . . . may be used . . . ." (Emphasis added.) The

---

[4] If two or more persons are seeking court appointment as guardian under Idaho Code § 15-5-204, then the court could consider factors such as those listed in Idaho Code § 32-717(1) to determine which person's appointment would be in the best interest of the child(ren).

11

comment does not support Heisses' argument; it supports the magistrate court's interpretation of section 15-5-212.[5]

Third, Heisses' proposed interpretation of "best interest" in section 15-5-212(a) would substantially diminish parents' rights to appoint their children's guardians by will. The Official Comment to Idaho Code § 15-5-204, which governs court appointment of a guardian, states, "[N]o authority to appoint a guardian for a minor exists if a testamentary guardian has accepted an effective appointment by will. The purpose of this restriction is to support and encourage testamentary appointments which may occur without judicial act." If a court could remove the parents' choice of guardian because the court felt that someone else would be a slightly better guardian, it would substantially diminish the rights of parents to choose the guardian they believe would be in the best interest of their children.

Finally, because of the power given to parents to make a testamentary appointment of a guardian for their unmarried minor children, Heisses' proposed interpretation conflicts with Idaho Code § 15-5-204. A person can become a guardian of an unmarried minor child by acceptance of testamentary appointment or by court appointment. I.C. § 15-5-201. A person who contends that he or she would be a better guardian than the testamentary guardian could only become guardian by court appointment. As explained above, the court cannot appoint such person as guardian if either the testamentary guardian has already accepted appointment or does so within thirty days after notice of the proceedings seeking court appointment. I.C. § 15-5-204. If the legislature intended that anyone could challenge a testamentary appointment simply by contending he or she would be a better guardian, there would have been no reason to limit proceedings for court appointment of a guardian as it has done in section 15-5-204.

The magistrate court held that in order to prove that removal of Conti as guardian would be in the best interest of the children, Heisses must prove that Conti was unfit or unqualified to be guardian of the children. Heissess failed to do so. The court did not err in refusing to adopt the interpretation of "best interest" proposed by Heisses. The court found that "Conti is in fact a fit and proper person to discharge the duties of testamentary guardian." As such, her removal would not be in the best interest of Children.

---

[5] As Heisses correctly state in their brief, "The Official Comment, due to re-numbering, must refer to Idaho Code § 15-5-212 when Idaho Code 15-5-211 is referenced."

**C. Did the Court Err in Holding that Heisses Were Not Entitled to the Rights Set Forth in Idaho Code § 32-717(3)?**

Idaho Code § 32-717(3) provides, "In any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interests of the child." Heisses contended in the magistrate court that this statute entitled them to be treated as parents of John Doe. The court rejected that argument. Heisses contend that the statute applies because "from the time John Doe was released from the hospital after the accident on October 3, 2008, until the time that the Magistrate ended that relationship by appointing Conti as the primary guardian, he had been actually residing with his grandparents."

Section 32-717(3) has no application to these proceedings. The statute begins, "In an action for divorce the court may . . . give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children." I.C. § 32-717(1). It only applies to actions for divorce, which this obviously is not.

**D. Is Conti Entitled to an Award of Attorney Fees for Defending the Cross-Appeal?**

Conti seeks an award of attorney fees on appeal under Idaho Code § 12-121 for defending against Heisses' cross-appeal. "Attorney fees can be awarded to the prevailing party on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Allbright v. Allbright*, 147 Idaho 752, 756, 215 P.3d 472, 476 (2009). Heisses' cross-appeal simply asked this Court to disregard the current statutes regarding appointment and removal of guardians and adopt a scheme Heisses believed would be more favorable to them. The magistrate court wrote that "much of Heiss' case asserting Conti's unfitness did have the appearance of 'grasping at straws.'" This appeal has even less merit. Although it refused to award Conti attorney fees under section 12-121, the magistrate court admonished Heisses, "In the event that Heiss pursues additional litigation beyond this point, a different conclusion may well be reached by this or another court." We award Conti attorney fees on appeal for defending against Heisses' cross-appeal.

**E. Did the Court Err in Ordering the Parties to Pay the Cost of Children's Court-Appointed Counsel?**

The magistrate court appointed an attorney to represent Children in these proceedings.  In its memorandum decision entered on March 27, 2009, the court wrote, "The reasonable fees and costs of the court appointed attorney for the children shall be evenly shared by Conti and Heiss, with each party promptly paying their half upon request."  On August 18, 2009, the court entered an order awarding the attorney $9,550.45 in fees.  The court held that the fees were to be paid from the estates of Children, but if those estates did not have the funds to pay the fees within ninety days, then Conti and Heisses were each to pay one-half of the cost, but could recover such sums from Children's estates.  Heisses argue:

> The Court on its own initiative ordered that the reasonable fees and costs of the court appointed attorney for the children shall be evenly shared by Conti and Heiss, with each party promptly paying their half upon request.
> No authority is cited for the award and the magistrate should be reversed.
> The attorney for the children should be paid from the Karl and Marisa's Estates.

The above is Heisses' entire argument on this issue in their opening brief.  The August 18, 2009, order entered by the magistrate court differed from the order it initially indicated it would enter.  Although Heisses' reply brief was filed the day before the court entered the August 18, 2009, order, they did not seek to supplement the record with a copy of that order, nor did they seek to file a supplemental brief addressing the actual provisions of the order.  This Court learned of the order during Conti's closing argument on appeal.  We have previously said, "We will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument." *KEB Enters., L.P. v. Smedley*, 140 Idaho 746, 754, 101 P.3d 690, 698 (2004).  We therefore decline to address this issue.

## IV.  CONCLUSION

We reverse the order of the magistrate court appointing Heisses as coguardians, and we affirm the order of the magistrate court denying Heisses' motion to remove Conti as guardian.  We award Conti costs on appeal, including attorney fees for defending against Heisses' cross-appeal.  We remand this case for further proceedings that are consistent with this opinion.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.